Good afternoon. We are here to have an argument in the United States versus, well, you know, those two Copley cases. And what we have here is two cases together that have essentially the same issues. And I see there's only one lawyer, same lawyers in both cases, both sides. Well, pick your case. You can argue. No, no, no, no, not first. Pick your case. We'll argue that one. I'm sorry. No, no. You pick your case and we'll argue that case. I argue both cases. Yeah. Hussein is one of them. That's the one you want to argue. Fine. Five ninety three. The last three digits of the this court's number, I think. Good. OK. We're going to argue that on 20 minutes aside. 40 minutes up. We're out of here. OK. Who wants to go first? OK. May it please the Court, Valentine, on behalf of the Copley Press team. I would like to address four issues this afternoon, unless the Court has additional issues it would like me to discuss. First, why the issues presented in these appeals are not moot. Second, the proper procedure for addressing an access request in a criminal case. Third, the authority of this Court to order the district court to file the unfiled plea agreements for the last five years in our judicial district. And fourth, why the First Amendment compelling interest test has not been met with respect to the case before, Your Honors. This case is not moot for several reasons. First of all, we are entitled to de novo review of all of the information that is sealed, including in some of these cases declarations, motions under seal, findings by the government, the government's argument. The only thing that the public has been told in this case is that sealing was necessary for the fair administration of justice. That is the only reason the public has been given. We also know that there was substantial cooperation with the defendants in this case because of the government's plea agreement. But we do not know if that is the reason for the sealing. And if that is the reason, there will be many, many cases in which plea agreements will never be exposed to the light of day in our judicial district. There are two elements, I guess, to the mootness argument. One would relate to cases other than this one, which involves the policy in general. And the other would relate to this case. And so your arguments on this case are not moot, I take it, just because the district court changed the policy. Is that right? That's right. And then your other argument on mootness as to the other cases, cases other than this one, is that the constitutional issue as to those cases needs to be addressed, and this is the best vehicle to do it. That's right. That voluntarily ceasing the policy does not change anything. It's an issue of law that's presented. This Court has already ruled on it in the Oregonian case. You cannot bargain away the public's right of access. And it's almost inconceivable that the public would know where all the cases are where plea agreements have not been filed, and the burden and expense of having to challenge each and every case would be prohibitive. So under advisory mandamus powers or the Court's inherent mandamus powers, we would ask you to reach those issues and argue that they're not moot. Advisory mandamus, huh? I'm sorry? Advisory mandamus. Yes, Your Honor. In the case of In re Providence Journal, the Court discussed that. There are also Ninth Circuit cases that discuss it. Basically, where an issue is of tremendous public importance and where it is a novel issue, the Court can reach it by advisory mandamus. Also, while the Court has taken care of the problem with respect to General Order No. 520, again, that does not remedy all of the harm for the past five years and all of the hundreds of plea agreements that have not been filed in our judicial district. And fifth, the appropriate procedure for raising access requests in criminal cases is at issue. The courts are split. There's conflicting authority as to what is the appropriate mechanism in a criminal case. And in this case, we felt like it should be addressed so that the public's right to access information is not irreparably harmed by delay, by the same objections and the same arguments being made over and over again. Could I ask about, you know, all these other cases that you want fixed? You know, the district has already changed its policy. And have they made it clear that they're not going to do anything about the old cases? Did somebody ask the district to do anything? Actually, no action has been taken by the district, even after changing their policy. There has not been a massive filing of plea agreements. When I inquired with the Assistant U.S. Attorney as to whether they would be filed, essentially what I was told is that there had been no request to file them, and therefore there was not going to be, you know, a voluntary filing of them by the Assistant U.S. Attorney. So, again, I'm not sure. You mean the way it was going to work was in each case, if the parties requested that if a party requested it be filed, it would be filed? Otherwise, it's not going to be filed? I think if you take these two cases as precedent, the only way we can get them filed is to go in and file in each case a request for access or a motion for access. The Court then, as it has in these two cases, employs essentially a secret practice where it has secret hearings, secret motions, and we get to basically argue against, quote, the fair administration of justice and whether that is sufficient to trump the First Amendment right of access. And so I'm not aware of any mechanism or any voluntary action by the Court to file any plea agreements that were affected by the 5-year policy. So I think it's going to have to come from this Court. Well, while we've leapfrogged to that one, then, this might be a good time to talk about it. I take it there are probably thousands of cases involved down there in the 5 years this policy has been in place. I would suspect. I do not know the number, Your Honor. The U.S. Attorney would. And at least some of those would involve some sensitive things where perhaps parts of the plea agreements ought to be redacted. That is correct. And under the compelling interest test, that can happen. Although before that happens, the Court must consider the alternatives, including the witness protection program. But would what I'm wondering is, is would it be any answer for us to just tell the district court to file them all when some of them are sensitive enough that that clearly wouldn't be in order? Or is there something short of that? Yes. I think the remedy is to tell the district court to comply with the First Amendment compelling interest test as to each and every plea agreement. But even though there are, say there's 5,000 of them, and there's 4,980 of those that nobody's ever going to care about, routine run-of-the-mill stuff that's now dead and buried in the files and nobody's ever going to want to see it, would we put the district court to all that problem on cases that nobody cares about? With all due respect to the district court, it created the problem. Well, it did, but we've got to solve it. I understand. I don't think the public in the dark can understand which cases it needs to see the plea agreements on and which it doesn't or which it's interested in and which it isn't. There may be trends that are important. There may be many, many cases that are being sealed for one reason as opposed to another reason, that without having those sealed, you know, the public won't ever know why they were sealed. Plea agreements happen in three-quarters of the cases in this country, according to the United States Supreme Court, and it's very important for the public to understand that process. And without the plea agreements being filed, it can't even begin to understand the process because it doesn't know what happened. So while I understand it is a huge burden, I think that that is the only way that you can ensure that the public has the right to scrutinize what happened in past plea agreements, and you can't bargain away the right of the First Amendment. Well, there's no bargain here. I don't think that's the point. I mean, it was a ñ I mean, you've got to admit, this district has been buried to the ground in both the criminal cases and lack of judicial resources, and this was, I take it, simply a response to one part of that process, to avoid a redaction hearing in a lot of these cases. But now we've got the problem. It's not enough to say you can't bargain it away because I don't know there was ever a bargain. Again, our position is that the plea agreements should be filed. We understand that it might be burdensome in some cases, although, I mean, I ñ as I sit here today, I don't know whether there's a sentence out of each of them that needs to be redacted or whether or not they're, you know, they're going to hold a hearing in each and every one and find that the entire plea agreement needs to be redacted. But I think the public's entitled to the information, and I don't think the inconvenience and the burden can trump the public's right to know. No, we have to keep the Court open, though. I understand. When did the Copley Press find out about the procedure generally? I'm not certain about that. I know that the current reporter on the Federal Courts I believe has been there about a year, and the practice was to get the plea agreements from the U.S. Attorney's Office. On certain cases, they were starting to get selectively denied, and that's when the Copley Press took up the challenge and became aware that an actual formal practice was in place where they weren't being filed and would not be filed, and that actually they would, in selective circumstances, not be given to the press. So you're saying there was really no way for Copley to know while this procedure was going on. I'm concerned about this burden of all these past closed files, basically, or not filed matters, you know, and whether it's, you know, really necessary to go back and, you know, stop the Court from functioning, basically. It's extremely hard for us, too, because we don't know what's in each and every one of the plea agreements. Again, we don't know if there's a pattern of why they weren't, you know, filed, if there's some specific issue the Court's concerned about. I know in these cases, Your Honor, is correct. In one, the Buendia case, it actually took two days of hearings, I believe, for the entire plea agreement. And that was after even portions of it had already been given out to the public. So while I understand the problem, again, I think the public is entitled to scrutinize the plea agreements. And I don't know the way around the burden and expense. Maybe the government will have some suggestions. Maybe the government can redact them or proffer the redactions to the Court and the Court can review them. With respect to the appropriate mechanism in a criminal case for raising access issues, there are courts that allow intervention despite the fact that there is no statute or rule for intervention in a criminal case. There are other cases that do not allow intervention because they say it is inappropriate. There are cases that allow writ of mandamus to be filed, to basically ask for access to plea agreements and other documents. Some courts actually hear it just on a simple motion. We believe that under the First Amendment the requirement is that the public be heard after notice is given that a closure or a sealing hearing is going to take place, and that at that point in time, if the individual is, you know, a member of the public and stands up and requests to be heard, that that is the mechanism that should be used, or a simple motion. But that intervention and writ of mandamus is expensive. It's permissive. It involves a lot of weighing and balancing of factors. It shifts the burden of proof, where the First Amendment requires the party requesting the sealing to actually bear the burden. And so, again, we believe that the proper mechanism is a request to be heard under the First Amendment or a simple motion. And how do we do that? I'm sorry? And how do we do this? In the State courts, I can tell you, you can show up and you simply ask to be heard when the court wants to have a portion of a closed hearing. If they want to seal a document, you can stand up and be heard. Reporters in the audience can stand up and be heard. Oh, I know, but that's State court. I understand. In Federal court, we believe that once notice is given to the public that there is going to be a hearing on whether or not there should be closure or sealing, that anyone who wants to should be able to file a motion or ask to just a simple member of the public under the First Amendment. I heard what you wanted, and I said, how are we going to do that? And you went into a discussion of what to do in State court. Well, if a reporter We have procedures, you know, in Federal court. The things you have to do. You can intervene. You can file an amicus brief. But if you're not a party, there's no mechanism for you to file a motion. How do we do this? Maybe you could go to the Rules Advisory Committee and ask for a new rule allowing for this kind of procedure that you want. So a drop-in procedure. But how do we I mean, you're welcome to tell us what's on your wish list, but I'm not I'm having difficulty imagining how we could do what you want us to do for you. Well, in the Globe newspaper case, the United States Supreme Court said under the First Amendment, the public has to be heard before there's a denial of access or a closure. If a member of the public is in the audience and the court is considering denying access, I think under the Globe newspaper case, if that person stands up and asks to be heard, since it's the public's right of access, that the court would have the authority to hear them. Also, under cases like the Seattle Times case, which was decided by this Court, their emotional Something will take up if and when somebody stands up and asks to be heard. Why are we talking about this here now? Because the First Amendment requires that the public be heard before there's any denial of access or closure of court proceedings. Okay. So? So the public press, was it present and asked to be heard? Not in this case, Your Honor. Okay. What happened You want us to rule on a procedure you didn't employ. You want us to take the concept of advisory mundaneness one step further and not only advise on some things that may be moot or unright, but also things we merely imagined could happen. Actually, what happened in this case is we ended up, because of objections by parties in the Buendia case, having to file a petition for writ of mandamus, having to file a motion for intervention, and requesting to be heard under the First Amendment, which is, again, what we believe the correct procedure is. And there are several main circuit cases, not only the Seattle Times case, which allow the press to be heard or the public to be heard by a simple motion, or at least that's the way it looks from the published decisions. And so motions are immediate. They're relatively inexpensive. I believe they can be oral. I think that, again, the First Amendment requires that if a member of the public wants to be heard and they're present, that they be heard before there's any closure or sealing. So you're saying you did make a request to be heard in a timely manner. Actually, in the Dick Lawley case, what happened was the reporter asked the court for the plea agreement. The judge represented to the reporter that he didn't have it, that it had been given back to the assistant U.S. attorney. The reporter then asked the assistant U.S. attorney for it and was told they could not have it. They then turned around and filed, because of the Boidia case and the track record there, the petition for writ of mandamus, the request to be heard under the First Amendment, and the motion for intervention. Kagan. We would like the Court to also pass on the procedural and substantive compliance with the First Amendment in this case. First of all, we do not believe that it is appropriate for the Court to simply allow the government to engage in massive secret motions and hearings when all they're going to proffer to the public is that the reason requires the fair administration of justice. That's not an exception to the First Amendment. It's not like saying the right to a fair trial is at issue. It's basically a bare conclusion that the public doesn't know what that means. We don't know if it's an ongoing investigation, a flight risk with another co-defendant, or a threat to some individual's safety. It forecloses the public's right to monitor whether or not the test is truly being complied with. Under the First Amendment, the public has the right to see how the courts operate and function, but in this case, they're simply told it's the bare administration of justice, and then the whole procedure goes behind closed doors. And the public simply can't monitor how the government is making decisions or how the court is making decisions without having some disclosure of what is required under the compelling interest test. Also, the adversary system in this country presupposes that, in fact, there will be a full and fair opportunity to confront the reason that is given for the denial of access. And again, in this case, it's simply too vague. If we knew that it was a threat to safety, we could cite a bunch of cases that show what the requirements are with respect to meeting that threshold. If it's an ongoing investigation, there's a different body of law that gets cited. But in this case, the reason given is simply not adequate. Tell me this. If we were to say that this process was unconstitutional, could we merely declare that and leave it to the district court to fashion a remedy, figuring it understands its files and, you know, once being told that what they're doing is incorrect and that they have to provide some kind of remedy, could we leave it that way? Well, within certain confines. I mean, obviously the First Amendment has strict procedural and substantive requirements that must be met. And so I think that the court would have to in some way comply with the First Amendment and fashioning a remedy if that's what this Court were to do. I mean, I think it still has to comply with what the First Amendment requires before it can simply say we're going to file a tenth of them or, you know, 40 percent of them or decide which ones we think are most important to the public. You've got a minute left. Do you want to use it for rebuttal? Yes, Your Honor. Good afternoon. Yvonne Campos on behalf of the United States. Regardless of what practice was in effect when the Hussein case came before the district court, the ceiling in that case was proper. Copley is not entitled to Mr. Hussein's plea agreement. There is a qualified right of access to plea agreements, not an absolute right of access to plea agreements. There wasn't a prior closure of the plea agreement until such time as Copley had been given notice that the government sought to seal it and until such time as the Court had considered Copley's objections to the ceiling. Isn't it true that portions of the plea agreement were already public, are now public? No, Your Honor, not with respect to Mr. Hussein's case. Mr. Hussein is the defendant in the Daghlawi matter, which was the pseudo-offedering conspiracy. He pled guilty pursuant to a plea agreement that was never made public in any way, shape or form. And, in fact, there's some misconceptions about the record. In the Hussein matter, there was no discussion by the court or by the prosecutor about what was taking place. There was a one-sentence reference at the disposition hearing by defense counsel that it would be anticipated that a further motion would be made under Section 5K1.1. That is the sole extent of any kind of discussion as to what was going on with Mr. Hussein's case. Mr. Hussein has not yet been sentenced. He remains pending sentence. And, in fact, since the district court changed its policy in December of 2002, seven of Mr. Hussein's co-defendants have pled guilty and their plea agreements are on file with the clerk's office and are readily available to the public. So the fact that what Copley asked for below the district court was that the district court grant them access to the plea agreement, that they stop the practice of marking plea agreements as exhibits, and that they declare the practice unconstitutional. When the court changed its practice in December, Copley got the remedy that it asked for below. Copley never asked the district court below to go back and file five years' worth of unfiled plea agreements. And, in fact, the record is absent as to any consideration of that because the district court never had the opportunity to consider that. So the fact that this is being requested as relief of this Court is beyond even de question. And the fact that the district court asked for below and was never considered below. Is she correct that, as a matter of course, the plea agreements are not filed now and that if somebody wants access, they have to request that they be filed? Here's what the record bears out, Your Honor, with respect to that. By their own declaration, Copley indicates that they had previously never been denied access by the government to a plea agreement until late October 2001. And that was in a case that they litigated called United States v. Kruger. So they were getting them from the U.S. attorney. Correct. They were getting them from the government. Okay. In addition to that, the newspaper reporter, by her own declaration, indicated that at the time that the assistant U.S. attorney denied her Mr. Hussain's plea agreement, she advised him, I have gotten plea agreements from your office before. Do you want to go back and make sure that you're denying me this plea agreement? And you can find that in the record, excerpt of record, page 2, lines 16 through 17. It's also in the government's supplemental excerpt of record. Her amended declaration is on excerpt of record page 65. And again, this is showing that what the record does show as to how the newspaper obtained plea agreements, notwithstanding the practice that began in late 1997, was that when they made the request of the government, the government provided access. So there was no blanket denial of access to plea agreements. In fact, there has been selective denial of access, and in those select interest instances, which number no more than half a dozen out of thousands of implicated cases, the government has moved to seal and a hearing has been held for a district judge to balance the factors as required by Oregonian and as required by Press Enterprise II. What's important for this Court to know is that with respect to the unfiled plea agreements, not only was this never asked of by the district court, and the district court never had an opportunity to consider, explain, represent itself with respect to its former policy. The Southern District of California has been one of the nation's busiest. I've been an assistant U.S. attorney in that district since the fall of 1995. Our criminal case filings — I want to interrupt you on what you're saying, but before I forget, did I get an answer to my question? The question was, was co-counsel — was opposing counsel correct that the plea agreements are not now being filed, and that if you want a plea agreement, you have to request — make a request of the court or the U.S. Attorney's Office to get a plea agreement? No, Your Honor, that is not correct. Since December 16th of 2002, plea agreements in the Southern District of California are filed once again, just as they were up until the fall of 1997. And, in fact, as I indicated, if you check the clerk's record for this case, for Mr. Hussain's case, seven of his co-defendants have pled guilty since December 2002, and their plea agreements are on file and available to the public. Okay. I'm sorry. Now I hope you know where you were. I do. Thank you, Your Honor. The potential caseload implicated by Copley's current request, again, which was never made below, which was never litigated below, would implicate at a minimum 20,000 prospective cases, because the criminal case filings in the Southern District were close to 4,000 criminal cases per year. A large number of those cases included multiple defendants. And when you talk about five years' worth of a practice, that would require going back, and not just the court assuming the burden of dealing with the filing of those documents, but the government also determining whether or not, in fact, those — there are some subset of those agreements that would require a closure request. And, again, the most important point there is that what Copley asked for below was to have the former practice stopped, and it was stopped. It ended December 16, 2002. Now they're sorry they didn't ask for more. Now they're sorry they didn't ask for more, and they are here asking for something that the district court never had a chance to consider, which is well beyond anything that even the First Circuit did in the Providence Journal case. Maybe you should argue that we should have the district court go back and reinstate the old practice, and that way we'll have something to the side. Well, Your Honor, what our argument is that it doesn't matter what the practice was, because these two specific cases are exceptions to the rule. The law under Oregonian and Press Enterprise II provides for selective closure. And we believe that the government met its burden for closure in these two particular cases, and that you, therefore, don't have to consider the broader question. You don't have to reach constitutional questions when you can reach them otherwise. And what we're saying here is that the former policy, which is moot, does not implicate a concern. The record does not show that they were denied blanket access by their own words. They acknowledge having previously received plea agreements from the government. They are now coming here asking for something completely different. But it really is much ado about nothing with respect to the record, because they have not established a record. And to say they didn't get anything, they didn't – I mean, they haven't gotten any part of the Hussain agreement, right? Correct. So why should not the Court consider redaction? The Court did consider a number of alternatives, and those were addressed in the Court's findings. What the government would say about that is that the criminal plea agreements in the Southern District are very standardized agreements. What we know from the record regarding Mr. Hussain's plea agreement is that it is 21 pages long. What we know with respect to Mr. Buendia's plea agreement is that it was 10 pages long. Now, our argument is that given the nature and the standardization of those agreements, this is not something that can be dealt with by redaction, because by simple redaction, what is left out there is something that then basically by the omission indicates what was left out. And the Court considered that below. They considered that in light of practitioners' experience. They considered that in light of the testimony that they took. And the district court made factual findings as to why they thought that it was the least restrictive alternative to seal the plea agreement. Copley has generally asserted a First Amendment constitutional right to know about government cooperators. That is something that was spoken to by a number of defense counsel before Judge Jones at the district court level when they indicated, my client has not pled guilty, but if my client were to plead guilty, I don't believe that the newspaper has a constitutional right of access to information about whether or not he's cooperating. And that all took place at the October 30th hearing before the Court. I just thought these plea agreements were like in sections, and you could take out like a whole section and still leave other sections that wouldn't reveal much about cooperation. Well, to the extent that there are standardized agreements and to the extent that specific sections are left out, the determination that has been made is that by taking out certain sections, you are in essence highlighting what has been taken out, and that that would be something that would be commonly known to practitioners. And on a wholly separate point, given Copley's interest in trying to get at the agreements by cooperators, the way that it actually works is that in criminal cases, defendants who cooperate with the government maintain plausible deniability about that cooperation. It is only when there is some type of paper that is produced that co-defendants or other criminal associates can point to that they then are stuck with not being able to plausibly deny what, in fact, they are doing with the government. And that's just a reality. And given the narcotics caseload in the Southern District of California, that is a very important reality. And this was addressed by a number of the defense counsel at the hearing before Judge Jones on the Hussein matter. Now, I've addressed, you know, a further reason why this Court should not grant Copley's request for relief that's heard in the first instance here regarding the former plea agreements is that, as a number of the defense counsel told Judge Jones, when the practice was in effect, the agreements were marked as exhibits, many defendants were under the impression and many defense attorneys advised their clients that those documents would not be publicly filed documents. And so to the extent that all those former defendants have some type of expectation of privacy, that is something that would have to be sorted out on a case-by-case basis in some subset of the more than 20,000 cases potentially implicated. But again, this was never raised below. There's never been an opportunity to consider this. And it's only being made before this Court because they got what they wanted below, which was to stop the former practice. And the constitutionality of that practice doesn't have to be reached, because whether or not it was a good policy, whether or not it's a better policy to go ahead and file the documents, Judge Gonzales noted below that the newspaper had not established that they had a right to have a plea agreement filed. And again, they were not being denied wholesale access by the government, because by their own words, they acknowledged that they did receive plea agreements from the government in the past, but it was only in select instances when they did not. And the record refers to solely six cases where they did not get access to a plea agreement. In one of them, they litigated it and Judge Miller ordered the government to turn it over, and it was turned over. Two of these cases are before you, and two other cases, three other cases were not litigated. With respect to the procedural posture of the Hussain case, in this circuit, a closure order, the propriety of a closure order is reviewed solely by mandamus, not by appeal. And for that reason, we believe that the appeal by Copley in this matter regarding the propriety of Mr. Hussain's plea agreements being sealed is improper. And with respect to ---- Kennedy, If we were to construe it as writ of mandamus, which we do it all the time,  What would that mean? Well, Your Honor, if you were to construe it as a writ of mandamus, there is a separate mandamus that's been filed, and in the Buendia matter, that would be problematic. Because in the Buendia matter, a separate three-judge panel dismissed the mandamus matter in that case, finding that the Copley press did not meet its burden under the Bauman factors. And so to construe the appeal in the Buendia matter as a mandamus would give them two bites at the apple and would put this panel in conflict with a former panel. I thought that wasn't, like, a merits appeal. That was some kind of screening panel or motion panel, and those decisions are ---- they don't bind another panel the same way. Is that true? My understanding is that a merits panel ---- I don't know if the panel below was a motions panel or not. It's a final order. It's binding just like anything else. It is. Only in the case of an interlocutory order, if there's a merits panel, the merits panel can only consider what the motions panel did on the interlocutory order. But it's a final order. It's a final order. It's just like any other panel. And that order can be found on page 176 of the Supplemental Excerpt of the Record. That was a final dismissal by the motions panel. Was it a final dismissal by the motions panel? Yes, Your Honor, it was a dismissal. In that case, the government was not ordered to respond to the Mandamus petition. And it was, again, it can be found on Supplemental Excerpt of the Record, page 176. It was a three-judge panel decision. But there's no Reggi Dicatta effect. Mandamus has no Reggi Dicatta effect. Can't. Mandamus has no Reggi Dicatta effect. No, it does not. But it is an extraordinary remedy in addressing the question by Judge Nelson as to whether or not the appeal should be construed as Mandamus. What I'm saying is that they filed Mandamus petitions in both actions. But then they were precluded by the earlier Mandamus for filing a second Mandamus and getting a different result if in the second case they show a different balance of hardships or whatever. There's no preclusive effect on the first as a result of the first order. Our point would only be that, as far as we understand, it was passed on. We never had an opportunity to respond to it, because the Court knows the government may only respond in Mandamus when ordered to do so. And so we did not have an opportunity to make our point in that consideration. And so to the extent that a prior panel has already considered it, it would be our argument that under the law of the circuit with respect to the review of closure orders, Mandamus is the vehicle. Copley's had their chance on the Buendia matter. Here, with respect to the Hossein matter, we assert that we have followed. There was a published order? No, it's an unpublished order, Your Honor. Then it wouldn't make law of the circuit, would it? No, Your Honor. Not as an unpublished order. But again, it's brought to the Court's attention because of the procedural way that the cases are before the Court. Are you saying, like, it's law of the case? That would be my policy argument. It's not law of the case, either. It can't. Substantively, I'm in the same position, though. Substantively, my my It's not the same. I'm sorry. It's not law of the case because it's subsequent Mandamus. He can't have law of racial dichotomy. He can't have law of the case. Then that is a quirk, then, I guess, by virtue of the two cases not having been consolidated, that would seem to, as a policy matter, lead to extra work for the circuit and for the case. Well, but you easily can't have subsequent Mandamus in a case, and you can see why the results can be different. You know, a case goes up to a certain point. I mean, let's say, for example, there's a prisoner who brings a Mandamus and says, you know, my petition, my habeas petition has been in submission for six months, and the district judge hasn't acted. We deny the Mandamus petition and say, well, it's not been long enough. So two years later, he comes back and says, district judge still hasn't acted. It's exactly the same request. It's exactly the same case. And I say, well, now it's a different Mandamus petition. You've got a different situation. And we can reach this different result without having to worry about the first one. So that's how Mandamus works. There's a reason why there's no rigid card effect. Okay. Well, in this case, there would be nothing different that would have taken place in the underlying litigation that would been a better-looking panel. Then aside from that, since I did not get a look at the prior panel, there's been nothing that's happened since then, because the Mandamus by the other panel. That's the answer we've gotten all day. I'll take your word for it. Again, on both with respect to Mr. Hussain's plea agreement and Mr. Buendia's plea agreement, the government followed to a T the requirements of Oregonian publishing. Copley got their procedural rights. They had notice of the fact that the government sought closure. They had findings issued. They got their substantive rights addressed. Is there something that we could do to – do you think you guys might profit from going to see the circuit mediator? They're pretty good in these things. This seems to me like it's a problem that transcends the particular cases. It's an issue with many facets, with many interests. I'm just wondering whether this might not be the kind of situation where working out a modus vivendi by mutual agreement rather than – rather than trying to use us as a hammer. Your Honor, this is a fascinating case with many fascinating issues, but I think most of them are academic. First of all, I represent the United States government. The policy below was never the policy of the United States government. The government followed the court's practice. It was the district court who is not here, who has not been represented in any way, shape, or form, who enacted the policy. So in that respect, I can only assert what the interests are of the government. I have made some attempt to assert some of the interests of the district court as well as defendants in general, from my knowledge as a practitioner in the district. But this was not the government's policy. This was a policy of the district court. And I think, quite frankly, in reliance on former case law, which indicates that courts have substantial leeway to manage their own judicial records. And if you did a mediation of some sort, you could bring in a representative of the district court, too, and maybe this would be something that would solve not just this problem, this case, but a whole stream of cases. Do you think this might be worth a try? Our mediation staff is very good. They have resolved all sorts of cases, including a death case, capital case, which is not so easy to mediate because you can imagine. Well, Your Honor, again, with respect to how these two cases have come before this court, the government's position is that the newspaper, the public, are not entitled to these two defendants' plea agreements. We agree that there is a general right of access to plea agreements. We agree that it is the better practice for the Southern District of California to be filing plea agreements. What to do about the former practice was never previously raised, and at a minimum, the district court should have an opportunity to have that before it, since it knows why it enacted that policy for respect to how to handle its own judicial records and since it has a number of interests to assert in that regard. Okay. Your Honor, time. Thank you. And you've got a minute. Thank you, Your Honor. Let me just make a few quick points. Number one, the former practice wasn't raised because it wasn't the former practice. It was the present practice of the court at that time. As the record shows, including the declaration of Marissa Taylor, in a short span of a few weeks, we had to litigate three cases. The Kruger case, Fuendia, and Deglali. It was at that point in time that litigation spurred the district court to change its unconstitutional practice. And lastly, it is the public's right to know, it's the public's right to scrutinize the plea agreements. Copley challenges a few of these, but the court stands in the shoes of the public and had the duty at the time to comply with the First Amendment and file the plea agreements or meet the compelling interest test. Did you raise with the district court what to do with the five years of past agreements? No, we have not, Your Honor. All right. Thank you. Thank you. I think you don't think that mediating this would do any good either, huh? My apologies. I'm sorry, Your Honor. I gather you don't. You're not too keen on mediating this dispute either. The government doesn't seem too keen on it. Again, it's the public's right to know, and the First Amendment sets forth the test. You know, just make it open here. Anybody who wants to, you know, you can have an open mediation. You know, people, you don't have to have them sell the streets. You know, you can have some bad people come in from the rest of the public. It would be great. I think the court needs to comply with the First Amendment. That's the test that's in place. All right. That was a no. I'm just plugging out here. Okay. Nice try. Okay. The case is arguably sent and submitted. Even the case that wasn't arguably sent and submitted, too. I think we're now adjourned. Okay. All rise. The session is now adjourned.
judges: Kozinski, Tg Nelson, Restani (Cit)